## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **R. ALEXANDER ACOSTA,**[1] | ) | |
| Secretary of Labor, | ) | |
| United States Department of Labor, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: |
| | ) | 2:15-cv-14310-GCS-EAS |
| **MIN & KIM INC., d/b/a** | ) | |
| **SEOUL GARDEN OF ANN ARBOR,** | ) | |
| a Michigan corporation, | ) | Hon. George Caram Steeh |
| **KOUNWOO HUR,** an individual, | ) | District Judge |
| and **SUNG HEE KIM**, an individual | ) | |
| | ) | Hon. Elizabeth A. Stafford |
| Defendants. | ) | Magistrate Judge |

### SECRETARY OF LABOR'S
### MOTION FOR SUMMARY JUDGMENT

Plaintiff R. Alexander Acosta, Secretary of Labor, U.S. Department of Labor

("Secretary"), pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local

Rule 7.1 of the Local Rules of the United States District Court for the Eastern District

of Michigan ("E.D. Mich. LR"), respectfully moves for summary judgment against

Defendants Min & Kim, Inc., d/b/a Seoul Garden of Ann Arbor ("Seoul Garden"),

Kounwoo Hur, individually, and Sung Hee Kim, individually (collectively,

---

[1] This action was commenced in the name of Thomas E. Perez, Secretary of the U.S. Department of Labor.  Mr. Perez is now the former Secretary of Labor, and R. Alexander Acosta is now the Secretary of Labor.  Therefore, Mr. Acosta is being automatically substituted for Mr. Perez as Plaintiff, pursuant to Fed. R. Civ. P. 25(d), and the caption of this action is being amended accordingly.

"Defendants") because there is no genuine dispute as to any material fact and the Secretary is entitled to judgment as a matter of law.

The Secretary respectfully seeks an order finding that the pleadings; Defendants' responses to the Secretary's interrogatories, requests for production of documents, and requests for admissions; depositions; company records and summary of records; and declarations, show there is no genuine issue of material fact and the Secretary is entitled to findings as a matter of law that:

1.     Seoul Garden is a covered "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of sections 3(r)(1) and 3(s)(1) of the Fair Labor Standards Act ("FLSA" or the "Act"), 29 U.S.C. § 203(r)(1) and 203(s)(1), and is accordingly subject to the Act's provisions.

2.     Defendant Kounwoo Hur is an "employer" under section 3(d) of the FLSA, 29 U.S.C. § 203(d)(3).

3.     Defendant Sung Hee Kim is an "employer" under section 3(d) of the FLSA, 29 U.S.C. § 203(d)(3).

4.     None of Defendants' employees for whom the Secretary seeks back wages and other damages in this matter are exempt from the FLSA's overtime provisions.  29 U.S.C. §§ 207, 213.

5.     Defendants violated the FLSA's overtime provisions, 29 U.S.C. §§ 207 and 215(a)(2), by failing to compensate their employees at least one and one-half times their regular rates for employment in excess of forty hours per week and are

jointly and severally liable for payment of back wages to certain of Defendants'
employees and former employees.

6.      Defendants violated the FLSA's recordkeeping provisions, 29 U.S.C.
§§ 211(c) and 215(a)(5), by failing to make and maintain records of (a) actual hours
worked by each employee each workday and workweek, (b) each employee's regular
rate for each workweek, (c) overtime premium pay for overtime hours worked, and
(d) names and contact information for each employee.

7.      The Secretary properly computed back wages for the time period from
September 11, 2013, to March 26, 2017, due to employees who were unlawfully
denied overtime wages.

8.      Defendants are jointly and severally liable for a sum of liquidated
damages equal to the sum of back wages due.

9.      The Secretary is entitled to judgment, pursuant to Section 17 of the Act,
29 U.S.C. § 217, restraining Defendants from prospectively violating the Act's
provisions.

10.     The Secretary is entitled to judgment, pursuant to section 16(c) of the
Act, ordering payment in the amount of $112,212.85 in unpaid overtime
compensation due employees under the Act with an equal amount of liquidated
damages for a total amount of $224,425.70.

Consistent with E.D. Mich. LR 7.1(a), the Secretary explained the nature of the instant motion to Defendants and sought concurrence.  Defendants indicated opposition to the instant motion.

Accordingly, the Secretary respectfully requests an order granting this *Motion for Summary Judgment* in accordance with the foregoing, or in the alternative, if the Court finds a genuine issue as to a material fact with respect to damages or other issues, entry of partial summary judgment on all remaining issues.  The factual and legal bases for granting the Secretary's motion are set forth in the accompanying supporting brief.

Respectfully submitted,

DANIEL L. LEMISCH
Acting United States Attorney

LOCAL COUNSEL


s/ Peter A. Caplan
PETER A. CAPLAN
Assistant U.S. Attorney
211 W. Fort Street, Ste. 2001
Detroit, MI 48226
(313) 226-9784
peter.caplan@usdoj.gov
P-30643

NICHOLAS C. GEALE
Acting Solicitor of Labor

CHRISTINE Z. HERI
Regional Solicitor


s/ Brooke E. Worden
BROOKE E. WORDEN
Trial Attorney
Office of the Solicitor
U.S. Department of Labor
230 S. Dearborn St., Ste. 844
Chicago, IL 60614
Telephone: (312) 353-1218
worden.brooke.e@dol.gov
Bar Number: 6299672 (IL)

Attorneys for **R. Alexander Acosta**, Secretary of Labor, U.S. Department of Labor

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **R. ALEXANDER ACOSTA,**[1] | ) | |
| Secretary of Labor, | ) | |
| United States Department of Labor, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: |
| | ) | 2:15-cv-14310-GCS-EAS |
| **MIN & KIM INC., d/b/a** | ) | |
| **SEOUL GARDEN OF ANN ARBOR,** | ) | |
| a Michigan corporation, | ) | Hon. George Caram Steeh |
| **KOUNWOO HUR,** an individual, | ) | District Judge |
| and **SUNG HEE KIM**, an individual | ) | |
| | ) | Hon. Elizabeth A. Stafford |
| Defendants. | ) | Magistrate Judge |

## BRIEF IN SUPPORT OF SECRETARY OF LABOR'S MOTION FOR SUMMARY JUDGMENT

### Issues Presented

I.   Whether the defendants' convoluted pay practices, including misrepresenting the flat pay to "include the overtime premium," violated Section 7 of the FLSA, 29 U.S.C. § 207, such that the defendants failed to pay employees the proper overtime premium for hours worked over 40 per workweek.

---

[1] This action was commenced in the name of Thomas E. Perez, Secretary of the U.S. Department of Labor.  Mr. Perez is now the former Secretary of Labor, and R. Alexander Acosta is the Secretary of Labor.  Therefore, Mr. Acosta is being automatically substituted for Mr. Perez as Plaintiff, pursuant to Fed. R. Civ. P. 25(d), and the caption of this action is being amended accordingly.

II.     Whether the defendants violated Section 11(a) of the FLSA, 29 U.S.C. § 211(a), by failing to keep records of hours worked per day, hours worked per week, computed regular rates, overtime compensation paid, and names and addresses of employees.

III.    Whether the amounts of back wages calculated by the Secretary are due.

IV.     Whether the defendants can meet their burden to avoid the requirement to pay liquidated damages equal to the amount of back wages due where the defendants, among other things, paid non-exempt employees on a salary or day-rate basis without calculating a regular rate and overtime premium based on that regular rate.

V.      Whether a prospective injunction restraining the defendants from violating the FLSA under Section 17, 29 U.S.C. § 217, when they have not come into compliance over two years after being informed by the Wage and Hour Division of their noncompliance, is appropriate.

<u>Controlling/Most Appropriate Authority</u>

**Cases:**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946)

*Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446 (1948)

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)

*Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962 (6th Cir. 1991)

*Dole v. Trusty*, 707 F. Supp. 1074 (W.D. Ark. 1989)

*Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832 (6th Cir. 2002)

*Herman v. Palo Group Foster Home*, 183 F.3d 468 (6th Cir. 1999)

*Hodgson v. Prior*, 340 F. Supp. 386 (S.D. Ohio 1972)

*McClanahan v. Mathews*, 440 F.2d 320 (6th Cir. 1971)

*Martin v. Funtime Inc.*, 963 F.2d 110 (6th Cir. 1992)

*Martin v. Tony & Susan Alamo Foundation*, 952 F.2d 1050 (8th Cir. 1992)

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)

*Newman v. Advanced Tech. Innovation Corp.*, 749 F.3d 33 (1st Cir. 2014)

*Sharpe v. Cureton*, 319 F.3d 259 (6th Cir. 2003)

*Solis v. Min Fang Yang*, 345 F. App'x 35 (6th Cir. 2009)

*Usery v. Associated Drugs, Inc.*, 538 F.2d 1191 (5th Cir. 1976)

*Walling v. Harnischfer*, 325 U.S. 427 (1945)

*Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945)

**Statutes:**

Fair Labor Standards Act of 1938, as Amended, 29 U.S.C. § 201 *et seq.*

Portal-to-Portal Act of 1947, 29 U.S.C. § 260

**Other Authorities:**

29 C.F.R. Parts 516, 531, 778

Fed. R. Civ. P. 56

## I.    INTRODUCTION

Plaintiff R. Alexander Acosta, Secretary of Labor, U.S. Department of Labor ("Secretary") submits this brief in support of his *Motion for Summary Judgment*. The Secretary brought the instant action, in part, to recover back wages and an equal amount of liquidated damages owed to Defendants' employees to whom they failed to pay overtime compensation in violation of Section 7 of the Fair Labor Standards Act of 1938 ("FLSA" or the "Act"), 29 U.S.C. § 207.

Summary judgment is appropriate where, as here, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The undisputed facts demonstrate as a matter of law that Min & Kim, Inc., d/b/a Seoul Garden of Ann Arbor ("Seoul Garden") is a covered enterprise under the FLSA, and Kounwoo Hur and Sung Hee Kim (with Seoul Garden, collectively, "Defendants"), as individuals, may be held jointly and severally liable. The undisputed facts further demonstrate that Defendants violated the Act by failing to pay non-exempt employees required overtime and to keep required records for such employees. As a result, the Secretary is entitled to back wages, an amount of liquidated damages equal to the back wages due, and an injunction to ensure future compliance.

## II.    STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.    Seoul Garden and its business operations.

Seoul Garden is a Michigan corporation located at 3125 Boardwalk Dr., Ann Arbor, MI 48108, engaged in the operation of a Korean and Japanese restaurant. (ECF No. 8, <u>Def's Answer</u> ¶ II(A).) Seoul Garden had an annual dollar volume of sales that exceeded $500,000 in 2013, 2014, and 2015; uses equipment manufactured outside of Michigan; and serves food products and alcohol manufactured outside of Michigan in the course of its business. (Ex. A, Def's Admiss. Nos. 4, 5, 6.) Defendants admit Seoul Garden is an enterprise engaged in commerce within the meaning of sections 3(r) and 3(s)(1)(A) of the FLSA, 29 U.S.C. §§ 203(r), (s)(1)(A). (Ex. A, Def's Admiss. Nos. 1, 8.)

Kounwoo Hur is a 49% owner and President of Seoul Garden. (Ex. A, Def's Admiss. Nos. 9, 10.) Mr. Hur is responsible for setting employees' pay rates, supervising employees, and computing employees' pay each pay period. (Ex. A, Def's Admiss. No. 13; Ex. B, Hur Tr.[2] at 10:1-4, 13:25-14:16, 21:12-23; Ex. C, Hur Resp. to Interrogs. No. 2.). Sung Hee Kim is a 51% owner and Secretary of Seoul Garden. (Ex. A, Def's Admiss. Nos. 11, 12.) Ms. Kim is responsible for setting employees' pay rates and supervising employees. (Ex. A, Def's Admiss. No. 13; Ex. D, Kim Tr. at 9:1-6; Ex. E, Kim Resp. to Interrogs. No. 2.) Defendants admit Mr. Hur and Ms. Kim are

---

[2] Mr. Hur testified at his April 13, 2017, deposition both in his personal capacity and as corporate designee for Seoul Garden pursuant to FED. R. CIV. P. 30(b)(6).

employers under section 3(d) of the FLSA, 29 U.S.C. § 203(d). (Ex. A, Def's Admiss. Nos. 2, 3.)

Seoul Garden employs cooks, sushi chefs, cooks' helpers, servers, busboys, and dishwashers. (Ex. B, Hur Tr. at 11:25-12:13; Ex. F, Organizational Chart.) The restaurant's hours of operation are 11:30am to 10:00pm on Mondays through Fridays, and 12:00pm to 10:30pm on Saturdays and Sundays. (Ex. B, Hur Tr. at 7:22-8:1; Ex. D, Kim Tr. at 6:17-7:7.) Employees generally work the entire day, six days per week. (Ex. B, Hur Tr. at 14:6-10; Ex. H, Schedules). Generally, each employee arrives one hour before the restaurant opens, takes a 30-minute lunch break at 2:00pm, followed by a two-hour break from 2:30pm to 4:30pm, and then working until the restaurant closes. (Ex. B, Hur Tr. at 8:15-9:3; Ex. D, Kim Tr. at 6:17-25.) Each employee also takes a 30-minute dinner break. (*Id.*) If an employee only works the lunch shift (before 2:00pm) or the dinner shift (after 4:30pm), he is considered to have worked a half-day. (Ex. H, Schedules; Ex. B, Hur Tr. at 32:16-18.)

The individuals listed on Exhibit A of the Secretary's Complaint, ECF No. 1-1, are or were Defendants' employees under section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1).[3] (Ex. B, Hur Tr. at 11:1-13; Ex. G, Contracts; Ex. A, Def's Admiss. Nos. 31, 33, 35, 37, 39, 41, 43, 45, 47, 49, 51, 53, 55, 57, 59, 63, 65.)

---

[3] On May 11, 2017, the Secretary filed a "Motion for Leave to Amend Complaint" (ECF No. 52) to update Exhibit A to the original Complaint to reflect additional employees of Defendants identified during discovery to whom the Secretary alleges Defendants failed to pay an overtime premium in violation of the FLSA.

**B.      Seoul Garden's compensation and recordkeeping practices.**

1.  <u>Defendants' violative time and recordkeeping practices prior to and during the Wage and Hour Division's investigation in 2014.</u>

Prior to and during the U.S. Department of Labor, Wage and Hour Division's ("Wage and Hour") investigation of Seoul Garden, which was initiated in October 2014, Defendants did not record actual hours worked for their employees. (Ex. H, Schedules; Ex. B, Hur Tr. at 21:2-11.) Rather, Defendants recorded half-days worked using an "O" and an "X" if the employee did not work. (Ex. H, Schedules.) If an employee worked a full day, the schedule shows two "Os." (Ex. H, Schedules.) Based on these "Xs" and "Os," Defendants would total the number of days worked in the column labeled "Total." (Ex. H, Schedules; Ex. B, Hur Tr. at 32:1-4.) Mr. Hur stated the purpose of the "X" and "O" schedules was to determine if an employee was absent and to total their "hours worked," despite the fact that actual hours worked were not recorded. (Ex. B, Hur Tr. at 31:17-32:18.) Mr. Hur assumed the number of hours, regardless of whether the employees worked greater or fewer hours each day. (Ex. B, Hur Tr. at 32:5-18.)

Defendants' pay records during this time period reflected only the total amount paid by cash or check, and did not record the regular rate and overtime premium pay. (Ex. I, 1st Pay Records; Ex. J, 2d Pay Records.)  Defendants also failed to record full names and contact information for each employee. (Ex. B, Hur Tr. at 12:14-13:8; Ex. M, Meng Decl. ¶12; Ex. N, Hur Email.) The employee contact lists provided by

Defendants to date do not include certain employees listed on Defendants' schedules and pay records, specifically, employees "Roberto," "Jose," "William," "Hyun," and "Odanis." (*Compare* Ex. O, 1st Employee List; Ex. P, 2d Employee List *with* Ex. H, Schedules; Ex. I, 1st Pay Records; Ex. J, 2d Pay Records.)

> 2. <u>Defendants started recording actual hours worked and documenting rates of pay in 2016, after this lawsuit commenced.</u>

Sometime in 2016, Defendants changed their time and recordkeeping practices and began using a timeclock to record employees' hours. (Ex. B, Hur Tr. at 19:19-20:22.) In January 2017, Defendants also entered into employment contracts with their employees. (Ex. G, Contracts.)  During discovery in 2017, Defendants produced updated records showing employees' actual hours worked and pay rates from August 29, 2016, to March 26, 2017. (Ex. K; 3d Pay Records; Ex. L; 4th Pay Records.)[4]

Defendants allege their pay practices in 2017, documented in Exhibits K and L, have been in place since at least 2013, and only their recordkeeping has changed.[5] (Ex. B, Hur Tr. at 26:20-28:6.) Thus, for purposes of this motion only, the Secretary accepts, *arguendo*, that Defendants' pay practices were consistent from 2013 to 2017, and the Secretary relies on Defendants' most recent pay records (Exhibits K and L) as

---

[4] Exhibit K, 3d Pay Records, includes the pay and time records for kitchen staff. Exhibit L, 4th Pay Records, includes the pay and time records for servers.  The first page of each exhibit is inaccurately labeled 2017 instead of 2016.  (Hur Tr. at 17:3-8.)

[5] Additionally, Mr. Hur states that the hours worked in Exhibits K and L are similar to the hours worked during 2013 to 2015.  (Ex. B, Hur Tr. at 9:8-11.)

probative evidence of Defendants' pay practices for the entire time period.  These pay practices, applicable to the entire time period as asserted by Defendants and agreed to by the Secretary for purposes of this motion only, are explained in detail in the following section.

3.   Defendants pay employees based on a "guaranteed wage" for six days of work per week.

When an employee is hired, Defendants consult with the employee about the amount the employee would like to be paid. (Ex. B, Hur Tr. at 14:4-15:6.) The employee's desired wage becomes his or her "guaranteed wage," which the employee receives if he works a requisite six days per week, regardless of actual hours worked. (Ex. B, Hur Tr. at 15:15-16:11; Ex. D, Kim Tr. at 8:3-13; Ex. G, Contracts.) If an employee works fewer days, his pay is less because the "guaranteed wage" is conditioned on the employee not missing any days. (Ex. B, Hur Tr. at 16:5-11.)

Mr. Hur and Ms. Kim then decide the employee's hourly rate of pay based on the "guaranteed wage." (Ex. B, Hur Tr. at 14:19-15:6, 27:20-23.) Defendants' 2017 employment contracts memorialize each employee's "Guaranteed Wage Payment" for a six-day workweek, as well as an hourly wage rate and overtime pay rate.  (Ex. G, Contracts.)

According to Defendants' pay records, when computing each employee's pay per pay period, Defendants use the actual hours worked by an employee (as recorded

by the timeclock[6]) to calculate the amount due based on the employee's set hourly rate (paying overtime at one-and-one-half times the set hourly rate).[7] (Ex. K, 3d Pay Records; Ex. L, 4th Pay Records.) If the amount due based on this hourly rate computation is less than the employee's "guaranteed wage," Defendants pay a "bonus to match" so the employee still receives his guarantee.[8] (Ex. B, Hur Tr. at 23:16-25:6; Ex. K, 3d Pay Records; Ex. L, 4th Pay Records.) Thus, each pay period, an employee receives twice his "guaranteed wage" payment as long as the employee works 12 days, irrespective of his actual hours worked. (Ex. B, Hur Tr. at 25:20-26:19.)

The "bonus to match" is not paid for extra effort on the part of the employee or as a reward for the employee's loyalty, but is rather intended only to make up the difference to get to the "guaranteed wage." (Ex. B, Hur Tr. at 28:10-19.) Hence, the more hours worked, the smaller the "bonus." (Ex. K, 3d Pay Records; Ex. L, 4th Pay Records.) On 11 occasions in the records produced for August 29, 2016 to March 26,

---

[6] Prior to obtaining a timeclock, Defendants would set the work hours for employees and assume employees worked those hours on a weekly basis, unless it was reflected otherwise on the "X" and "O" schedules.  (Ex. B, Hur Tr. at 31:17-32:18.)  For instance, Mr. Hur considered most employees to work 52 hours per week, consisting of 8.5 hours worked on Monday through Friday and 9 hours worked on Saturday and Sunday. (Ex. B, Hur Tr. at 21:5-11.)

[7] The Secretary does not concede that Defendants actually calculated an amount due based on an hourly wage.  For purposes of this motion only, the Secretary assumes *arguendo* Defendants calculated employees' pay as reflected in the records provided.

[8] For some employees living in housing provided by Defendants, Defendants deducted $129 for rent. (Ex. B, Hur Tr. at 23:10-15.)

2017, employees received a *negative* "bonus to match." (Ex. K, 3d Pay Records; Ex. L, 4th Pay Records).

<ol start="4">
<li><u>Defendants' lack of good faith efforts to comply with the FLSA.</u></li>
</ol>

Prior to the initiation of the Wage and Hour Division's investigation of Seoul Garden, Defendants knew employers were required to pay one-and-one-half times an employee's regular rate of pay for hours worked in excess of 40 in a workweek. (Ex. A, Def's Admiss. No. 75.) However, Defendants did not discuss their pay practices, timekeeping, or compliance with the FLSA with any financial or legal advisor prior to October 24, 2014.[9] (Ex. C, Hur Resp. to Interrogs. No. 3; Ex. E, Kim Resp. to Interrogs. No. 3; Ex. B, Hur Tr. at 35:2-9.) In addition, prior to October 28, 2014, Defendants did not review any U.S. Department of Labor materials regarding the legality of their pay practices for kitchen staff and servers. (Ex. A, Def's Admiss. No. 72.)  By Mr. Hur's account, Defendants merely adopted their pay practices from those of Seoul Garden's prior owner. (Ex. B, Hur Tr. at 34:23-35:35.)

---

[9] Mr. Hur stated during his deposition on April 13, 2017, that he consulted with his accountant Amy Lee around the time he bought the business in 2008 about Seoul Garden's pay practices.  (Ex. B, Hur Tr. at 33:24-34:22.)  He could not recall the specifics of their conversation or when it took place. (*Id.*)  Mr. Hur did not disclose such a conversation in his interrogatory responses dated August 31, 2016.  (Ex. C, Hur Resp. to Interrogs. No. 3.)  Ms. Lee is now deceased.  (Ex. B, Hur Tr. at 37:7-9.) Deposition testimony from Ms. Lee was not obtained prior to her untimely death.

### C. Wage and Hour Division's investigation, findings, and computations.

On October 28, 2014, the Wage and Hour Division initiated an investigation of Seoul Garden. (Ex. M, Meng Decl. ¶3.) Wage and Hour Investigator ("WHI") Jihong Meng was assigned to the case as the lead investigator, and WHIs Romelia Martinez-Stempihar and Ricardo Caudillo assisted by interviewing Spanish-speaking employees. (Ex. M, Meng Decl. ¶4.) The investigation period covered October 29, 2012, through October 28, 2014. (Ex. M, Meng Decl. ¶5.)

Defendants provided copies of "Employee Schedules" as time records (Ex. M, Meng Decl. ¶6; Ex. H, Schedules) and pay records reflecting semi-monthly payments in cash and by check. (Ex. M, Meng Decl. ¶8, 9; Ex. I, 1st Pay Records). Defendants' accountant also provided pay records showing payments by check. (Ex. J, 2d Pay Records). Defendants' records did not contain hourly rates for the majority of their employees for the period of the investigation. (Ex. M, Meng Decl. ¶9.)[10] Defendants also lacked records reflecting actual hours worked, amount of overtime hours worked, and overtime pay earned. (*Id.*) The records provided to Ms. Meng indicated employees were paid on a day rate or salary basis without computing overtime pay. (Ex. M, Meng Decl. ¶11.)

---

[10] Mr. Hur claims that he recorded hourly rates of employees in a notebook, but he did not produce this notebook at any time during the Wage and Hour investigation, despite WHI Meng's requests for hourly rates for employees. (Ex. B, Hur Tr. at 30:12-24; Ex. M, Meng Decl. ¶ 10.) Nor did Defendants produce the notebook during discovery. Mr. Hur states that he gave everything to Wage and Hour that he had at the time. (Ex. B, Hur Tr. at 18-24.)

The three WHIs interviewed several of Seoul Garden's employees, as well as Mr. Hur and Ms. Kim. (Ex. M, Meng Decl. ¶4, 11.) Mr. Hur stated employees were paid on a daily basis. (Ex. M, Meng Decl. ¶10.) When questioned, Defendants could not provide hourly rates for employees. (*Id.*) During the investigation, Defendants alleged they paid overtime. (*Id.*) In support thereof, Defendants submitted two reconstructions to demonstrate how overtime was paid. (Ex. M, Meng Decl. ¶13, 14; Ex. Q, 1st Reconstruction; Ex. R, 2d Reconstruction.) The first reconstruction included hourly rates to the 1/10th of a cent. (Ex. Q, 1st Reconstruction.) The second reconstruction incorporated deductions and "bonuses" that were never mentioned by Mr. Hur or Ms. Kim during their initial interviews with Wage and Hour and did not appear on the pay records previously produced. (Ex. R, 2d Reconstruction; Ex. M, Meng Decl. ¶14.) Because of the inconsistencies between the two reconstructions, the fact that these records were computed in response to Wage and Hour's inquiries and not before (Ex. B, Hur Tr. at 41:5-10, 43:2-5), as well as prior representations made by Mr. Hur and Ms. Kim, these reconstructions were not credited by Wage and Hour. (Ex. M, Meng Decl. ¶15.)

During discovery, Defendants produced updated time and pay records for the time period of August 29, 2016, to March 26, 2017. (Ex. K, 3d Pay Records; Ex. L, 4th Pay Records.) To date, Defendants have not produced corresponding records for the period of October 15, 2014, to August 29, 2016, despite the Secretary's repeated requests. (Ex. M, Meng Decl. ¶ 17; Ex. S, Def's Resp. to Prod. Req. Nos. 12, 13.)

Based on the investigation's findings and subsequent discovery conducted in this proceeding, Wage and Hour determined Defendants owe employees $112,212.85 in unpaid overtime compensation for the period of September 11, 2013 through March 26, 2017. (Ex. M, Meng Decl. ¶ 20; Ex. T, Spreadsheets; Ex. U, WH-56; Ex. V, 2017 Back Wages (Kitchen); Ex. W, 2017 Back Wages (Servers).)

## III.   ARGUMENT

### A.   Defendants are jointly and severally liable under the Act.

The FLSA's overtime and recordkeeping provisions cover employers whose employees are employed in an enterprise engaged in commerce.  29 U.S.C. §§ 213(r), (s)(1)(A).  Defendants admit that Seoul Garden is a covered enterprise under the Act. (Ex. A, Def's Admiss. Nos. 1, 8.) Individual liability also exists under the FLSA for "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d); *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991). Defendants admit Mr. Hur and Ms. Kim are "employers" under the FLSA. (Ex. A, Def's Admiss. Nos. 2, 3.) Accordingly, Defendants may be held jointly and severally liable under the Act. *See, e.g., Elliott Travel & Tours*, 942 F.2d at 965.

### B.   Defendants violated the FLSA's overtime provisions.

1.   <u>Defendants used a deceptive pay practice to give the appearance of compliance with the FLSA.</u>

Defendants did not compute each employee's regular rate on a workweek by workweek basis for purposes of calculating overtime, resulting in unpaid overtime

compensation due to employees. The FLSA prohibits employers from employing a non-exempt employee for more than 40 hours in a workweek, unless such employee is compensated for his employment in excess of 40 hours "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). The regular rate includes "all remuneration for employment" paid to the employee, *id.*, and is computed on a workweek basis by dividing total weekly remuneration by the total number of weekly hours worked. 29 C.F.R. § 778.109. This includes employees who are paid an hourly rate, a piece rate, day rate, and salary. *See* 29 U.S.C. § 207(g); 29 C.F.R. §§ 778.110-.113; *accord Sharpe v. Cureton*, 319 F.3d 259, 270-71 (6th Cir. 2003).

Defendants paid their employees on a day rate basis, represented as a "Guaranteed Wage Payment" for six days of work per week. If an employee works greater or fewer than six days per week, Defendants add or deduct a day rate, calculated by dividing the employee's guaranteed wage payment by six to arrive at a day rate. This practice is evidenced by Defendants' employment contracts, as well as the most recent pay and time records. (*See* Ex. G, Contracts; Ex. K, 3d Pay Records.)[11] For instance, the employer promised Junhong Park, a cook, a guaranteed

---

[11] Each chart on the following pages is compiled from information contained in Exhibit K, 3d Pay Records, which represent the most comprehensive records produced by Defendants to date.  Defendants allege that their pay practices have been consistent; only their recordkeeping has changed.  Accordingly, these records are demonstrative evidence of Defendants' pay practices and overtime violations from 2013 to 2017 for purposes of this motion only.

wage of $1,200 for six days of work per week, or $2,400 per bi-weekly pay period, (Ex. G, Contracts), equaling $200 per day. When Mr. Park worked only 11 days instead of his scheduled 12 days, he received $200 less.[12]  Defendants' pay records "on their face" show the day rate for Mr. Park, as reflected in the chart below:

| Difference in Days Worked vs. Total Pay | | | |
|---|---|---|---|
| **Junhong Park**: $1,200 guaranteed rate for 6 days/week = $200 per day | | | |
| Pay Period | Days Worked | Total Pay | Difference |
| 01/16/17-01/29/17 | 12 | $2,400 | |
| 01/30/17-02/12/17 | 12 | $2,400 | |
| 02/13/17-02/26/17 | 12 | $2,400 | |
| 02/27/17-03/12/17 | 12 | $2,400 | |
| 03/13/17-03/26/17 | **11** | $2,200 | -$200 |

Defendants' use of a day rate, calculated based on the employee's "guaranteed wage" rate, is evident throughout Defendants' pay records and consistently applied to employees, as illustrated below for three additional employees:

| Difference in Days Worked vs. Total Pay | | | |
|---|---|---|---|
| **Chong K Kim**: $1,080 guaranteed rate for 6 days/week = $180 per day | | | |
| Pay Period | Days Worked | Total Pay | Difference |
| 01/30/17-02/12/17 | 12 | $2,160 | |
| 02/13/17-02/26/17 | **13** | $2,340 | +$180 |
| 02/27/17-03/12/17 | 12 | $2,160 | |

---

[12] The employer's records are relatively consistent in this respect, except that the records reveal that during the following periods, employees were each paid a bonus: 12/05/16-12/18/16 (employee received an additional half-day's pay), 12/19/16-01/01/17 (employee received $200 or $300), and 01/02/17-01/15/17 (employee received an additional day's pay).

| 03/13/17-03/26/17 | 12 | $2,160 | |
|---|---|---|---|
| **Difference in Days Worked vs. Total Pay** | | | |
| **Jose Neris Flores**: $508 guaranteed rate for 6 days/week = ==$84.67 per day== | | | |
| Pay Period | Days Worked | Total Pay | Difference |
| 01/30/17-02/12/17 | **11** | $931 | ==-$85== |
| 02/13/17-02/26/17 | 12 | $1,016 | |
| 02/27/17-03/12/17 | 12 | $1,016 | |
| 03/13/17-03/26/17 | 12 | $1,016 | |

| **Difference in Days Worked vs. Total Pay** | | | |
|---|---|---|---|
| **Seong Bennett**: $969 guaranteed rate for 6 days/week = ==$161.50 per day== | | | |
| Pay Period | Days Worked[13] | Total Pay | Difference |
| 01/30/17-02/12/17 | 12 | $1,939 | |
| 02/13/17-02/26/17 | 12 | $1,939 | |
| 02/27/17-03/12/17 | **8** | $1,293 | ==-$646 (-$161.50 x 4)== |
| 03/13/17-03/26/17 | **10** | $1,616 | ==-$323 (-$161.50 x 2)== |

Paying employees a day rate is not prohibited by the FLSA, provided the employer complies with the overtime requirement. *See, e.g.*, *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424-25 (1945) (employer and employee can "agree to pay compensation according to any time or work measurement they desire" but cannot use this freedom of contract to negate the statutory purposes of the FLSA). If an employee is paid by the day, "his regular rate is determined by totaling all the sums received at such day rates or job rates in the workweek and dividing by the

---

[13] Although it appears that Seong Bennett worked 9 days during the 02/27/17-03/12/17 pay period, a closer examination of the hours shows she only worked two half-days during the pay period, resulting in 8 days worked from 02/27/17-03/12/17. Defendants' calculation of half-days when determining pay is evidenced by Defendants' prior use of schedules ("Xs" and "Os") to record whether employees were present or absent each half-day. (*See* Ex. H, Schedules.)

total hours actually worked." 29 C.F.R. § 778.112. The employee is then entitled to

"extra half-time pay at this rate for all hours worked in excess of 40 in the workweek."

*Id.*; *see also* 29 C.F.R. § 778.109 ("The Act does not require employers to compensate

employees on an hourly rate basis . . . [but] the overtime compensation due to

employees must be computed on the basis of the hourly rate derived therefrom, and

therefore, it is necessary to compute the regular hourly rate of such employees during

each workweek."). Where an employee works a different number of hours and is paid

a day rate, the regular rate necessarily varies workweek by workweek. 29 C.F.R. §

778.108; *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 461 (1948); *Newman v. Advanced

Tech. Innovation Corp.*, 749 F.3d 33, 37 (1st Cir. 2014) ("The regular rate cannot be

stipulated by the parties; instead, the rate must be discerned from what actually

happens under the governing employment contract." (quotation marks and citation

omitted)).

　　　　Instead of computing the regular rate on a workweek by workweek basis for

purposes of computing overtime, Defendants paid a "guaranteed wage" to their

employees, adding or subtracting a day rate when the employee picked up or dropped

a day. Defendants paid the same amount based on days worked, regardless of the

number of hours of overtime worked each workweek. To illustrate this, we again look

at Mr. Park, who worked between 27 to 37 overtime hours during the pay periods set

forth below, yet was paid the same amount each pay period (with the exception of the

pay period in which he worked one day less).

| Summary of Defendants' Total Pay vs. Overtime Hours | | | |
|---|---|---|---|
| **Junhong Park**: $1,200 guaranteed rate for 6 days/week = $200 per day | | | |
| Pay Period | Days Worked | Overtime Hours | Total Pay |
| 01/16/17-01/29/17 | 12 | 35.82 | $2,400 |
| 01/30/17-02/12/17 | 12 | 34.96 | $2,400 |
| 02/13/17-02/26/17 | 12 | 36.15 | $2,400 |
| 02/27/17-03/12/17 | 12 | 37.18 | $2,400 |
| 03/13/17-03/26/17 | 11 | 27.98 | $2,200 |

Had Defendants computed overtime pay properly, the total pay should vary each week because the number of overtime hours worked varied. Accordingly, Mr. Park's pay for the first pay period above should have been $2,791.07. This figure is arrived at by first calculating Mr. Park's regular rate based on the amount he received for that workweek (figures from columns "Amount Due" plus one-half of the "Bonus to Match" for pay period 01/16/17-01/29/17, Ex. K, 3d Pay Records) divided by the actual hours worked.[14] Mr. Park is then entitled to additional half-time pay at this regular rate for all overtime hours for the workweek, as illustrated below:

| Proper Overtime Calculation for 01/16/17-01/29/17 Pay Period | | | | | |
|---|---|---|---|---|---|
| **Junhong Park**: $1,200 guaranteed rate for 6 days/week = $200 per day | | | | | |
| Workweek | Hours Worked | Total Pay | Regular Rate | OT Hours | Overtime Pay Due |

---

[14] Defendants' pay records reflect that Defendants deducted $129 from many employees' pay for housing provided by Defendants.  (Ex. K, 3d Pay Records.)  An employee's regular rate is computed prior to an employer taking a housing deduction. *See* 29 C.F.R. § 531.37(b).  Thus, in the example above, Mr. Park's total pay for the pay period equals $2,529 instead of $2,400.

| | | | | | |
|---|---|---|---|---|---|
| 01/16/17-01/22/17 | 57.32 | $1,249.4125 | $21.7971 | 17.32 | $188.76 |
| 01/23/17-01/29/17 | 58.5 | $1,279.4875 | $21.8716 | 18.5 | $202.31 |
| | TOTAL PAY DUE EMPLOYEE | **$2,400 + $391.07 = $2,791.07** | | | |

Using this proper method of calculating the regular rate, Mr. Park's pay should vary

each pay period, commensurate with the different number of overtime hours worked:

| Pay Received vs. Amount Employee Should Have Received | | | | |
|---|---|---|---|---|
| **Junhong Park**: $1,200 guaranteed rate for 6 days/week = $200 per day | | | | |
| Pay Period | Days Worked | OT Hours | Def's Pay Amounts | Should Have Received[15] |
| 01/16/17-01/29/17 | 12 | 35.82 | $2,400 | $2,791.07 |
| 01/30/17-02/12/17 | 12 | 34.96 | $2,400 | $2,784.56 |
| 02/13/17-02/26/17 | 12 | 36.15 | $2,400 | $2,793.56 |
| 02/27/17-03/12/17 | 12 | 37.18 | $2,400 | $2,801.23 |
| 03/13/17-03/26/17 | 11 | 27.98 | $2,200 | $2,503.03 |

Because Defendants pay on a day-rate basis without calculating the regular rate

on a workweek by workweek basis and without paying the additional half-time

overtime premium based on that regular rate, Defendants' practices violate the FLSA.

   2.   Defendants created artificial hourly rates and paid "pseudo-bonuses."

Defendants argue they paid employees based on a legitimate hourly rate and

overtime premium, and the overtime premium is "built into" their "guaranteed wage,"

a common scheme used by employers to avoid paying overtime. To look at

Defendants' recent pay records, it may very well appear to the casual observer that

---

[15] For a breakdown of the corresponding regular rates and overtime calculations per pay period, *see* Ex. V, 2017 Back Wages (Kitchen).

Defendants are paying an hourly rate and overtime premium. However, Defendants merely devised an unlawful scheme designed to give the appearance of compliance that actually allows Defendants to pay a pre-determined wage each pay period without consideration of actual hours worked in violation of the FLSA. "[T]he overtime provisions of the [A]ct cannot be avoided by setting an artificially low hourly rate upon which overtime pay is to be based and making up the additional compensation due to employees by other means." 29 C.F.R. § 778.500(a).

Defendants explain their system as follows. After calculating the amount due for hours worked (including overtime), Defendants make up the difference to reach the employee's "Guaranteed Wage Payment" by adding a "bonus to match." (Ex. B, Hur Tr. at 23:16-25:6) For example, Mr. Park was paid $2,400 for the 2/27/17-3/12/17 pay period. The pay records show he was due $2,308.175[16] based on his hours worked and an hourly rate of $17.00 per hour. After deducting $129 for rent, Mr. Park would have been paid $2,179.175. Because this amount did not equal Mr. Park's "guaranteed wage" of $2,400 per pay period, Mr. Park received a $220.825 "bonus to match" to make up the difference. (Ex. K, 3d Pay Records.)

As noted in the regulations, this "scheme" does not comply with the Act. *See* 29 C.F.R. § 778.500(e) ("The scheme is no better if the employer agrees to pay straight time and overtime compensation on the arbitrary hourly rates and to make up the difference between this total sum and the piece-rate total in the form of a bonus

---

[16] Defendants' pay records do not round to the cent.

to each employee."); *see also* 29 C.F.R. § 778.502(e) ("[W]herever the employee is guaranteed a fixed or determinable sum as his wages each week, no part of this sum is a true bonus and the rules for determining overtime due on bonuses do not apply."). The Supreme Court has flatly rejected Defendants' argument. *See, e.g.*, *Walling v. Harnischfer*, 325 U.S. 427, 432 (1945) ("When employees do earn more than the basic hourly rates because of the operation of the incentive bonus plan[,] the basic rates lose their significance in determining the actual rate of compensation.").

Defendants' scheme becomes all the more obvious when examining the "bonuses" awarded to employees. These bonuses are different each week, become smaller when an employee works *more* hours, and actually become negative numbers in weeks where the employee works more than a certain number of hours. *See* 29 C.F.R. § 778.502(b) (describing identical situation where "bonuses" would "vary from week to week, becoming smaller as the hours increase and vanishing entirely in any week in which the employee works 55 hours or more"). By using these pseudo-bonuses, Defendants have not properly computed overtime compensation for their employees in violation of the Act. *Accord Dole v. Trusty*, 707 F. Supp. 1074, 1077-78 (W.D. Ark. 1989) (finding similar scheme in which truck drivers were paid a flat hourly rate with bonus to ensure their pay would not fall below previously agreed-upon levels violated the FLSA).

    3.  <u>Defendants' "bonus to match" does not qualify as a gift or payment<br>for the employer's failure to provide sufficient work.</u>

Further, Defendants cannot argue the "bonus to match" is merely a gift or payment for the failure of the employer to provide sufficient work. *See* 29 U.S.C. § 207(e)(2). In order to exclude these payments from the calculation to determine the regular rate, the payments must be for "occasional periods" and "not made as compensation for [the employee's] hours of employment." 29 C.F.R. § 778.200(a)(2); *accord* 29 C.F.R. § 778.218(c) (failure to provide work refers to "occasional, sporadically recurring situations"). Here, the "bonus to match" is not occasional, but consistent week after week. Further, the "bonus to match" compensates employees at their "Guaranteed Wage Payment," which is based on the employee working six days per week, which almost every employee did consistently on a weekly basis. Thus, it is designed as day-rate compensation, not a bonus.

Even if Defendants' "bonus to match" is considered a true bonus, it is non-discretionary and must still be included when computing the regular rate for overtime purposes. *See* 29 C.F.R. § 778.209(a), 778.211(b).

**C.    Defendants violated the FLSA's recordkeeping provisions.**

Section 11(c) of the FLSA requires employers to make, keep, and preserve records of the persons employed and their wages, hours, and other conditions of employment. 29 U.S.C. § 211(c). This includes employees' names and addresses. 29 C.F.R. § 516.2(a)(1). During the investigation and to date, Defendants have not been

able to produce full names and addresses for some of their employees and former employees. (*Compare* Ex. H, Schedules, *with* Ex. N, Hur Email; Ex. O, 1st Employee List; and Ex. P, 2d Employee List.)

The regulations also require employers to record regular hourly rates of pay for any workweek in which overtime compensation is due, overtime premium paid, hours worked each workday, and total hours worked each workweek. 29 C.F.R. § 516.2(a). Prior to and during Wage and Hour's investigation, Defendants failed to record hourly rates, overtime premium paid, or actual hours worked for the majority of their employees.[17] Instead, Defendants produced schedules showing an "X" or "O" for half-days worked, and pay records stating only the amount paid in cash or by check. Therefore, Defendants did not comply with the recordkeeping provisions of the Act.

**D. Wage and Hour properly computed the unpaid overtime compensation.**

Where an employer violates the recordkeeping provisions of the Act, the courts follow the burden-shifting framework set forth in the Supreme Court's decision in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946). For any period in which the employer has failed to maintain accurate records as required by the Act, the Secretary's burden of proof as to the extent of any back wage liability is met by showing that work was performed which was not properly compensated and producing sufficient evidence to show the nature and extent of that work as a matter

---

[17] Defendants produced pay records via their CPA that contained hourly rates for some employees, but not all.

of just and reasonable inference. The burden then shifts to the employer either to come forward with precise evidence of the work performed or to rebut the reasonableness of the inference to be drawn from the Secretary's evidence. *Id.* at 687-88; *see also Herman v. Palo Group Foster Home*, 183 F.3d 468, 472 (6th Cir. 1999). The employer must not be allowed to profit from difficulties of proof created by his own misconduct. *Mt. Clemens*, 328 U.S. at 688. Evidence that provides a reasonable basis for inference of a "pattern or practice" concerning the actual hours worked is sufficient for approximation of a remedy. *Martin v. Tony & Susan Alamo Foundation*, 952 F.2d 1050, 1052 (8th Cir. 1992).

WHI Meng calculated the overtime wages due to Defendants' employees primarily based upon the records provided by Defendants during the investigation and litigation and to a lesser extent on employee interviews. For periods in which pay or time records were missing, WHI Meng had to reconstruct employees' pay and hours worked. Wage and Hour ultimately determined Defendants failed to pay $112,212.85 in back wages from September 11, 2013, through March 26, 2017. (See Ex. M, Meng Decl. ¶20-31, detailing how back wages were calculated, incorporated herein.)

### E.    The Secretary is entitled to recover liquidated damages.

The FLSA provides that an employer who violates the Act's overtime provisions "shall be liable" for liquidated damages equal to the amount of unpaid overtime compensation. 29 U.S.C. § 216(b). Liquidated damages are compensation,

not punishment. *McClanahan v. Mathews*, 440 F.2d 320, 322 (6th Cir. 1971). The Sixth Circuit recognizes double damages as "the norm" and has referred to them as "mandatory." *Solis v. Min Fang Yang*, 345 F. App'x 35, 38 (6th Cir. 2009). A trial court may only refuse liquidated damages if "the employer shows that he acted in good faith and that he had reasonable grounds for believing that he was not violating the Act." *Elliott Travel & Tours*, 942 F.2d at 967 (citation omitted); *see also* 29 U.S.C. § 260. The employer has the "substantial burden" of proving that "its acts giving rise to the suit are *both* in good faith *and* reasonable." *Elliott Travel*, 942 F.2d at 968 (citation omitted). Thus, the test encompasses both a subjective and objective standard, and ignorance of the law has no bearing in the analysis. *Min Fang Yang*, 345 F. App'x at 39. In the absence of such proof, the district court has no power or discretion to reduce an employer's liability for the equivalent of double damages, *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 840 (6th Cir. 2002) (citation omitted), and even where such proof is established, full liquidated damages may still be awarded. *McLanahan*, 440 F.2d at 323.

The Secretary is entitled to recover liquidated damages in the amount equal to the wages sought. Defendants never sought advice as to whether their overtime pay practices were in compliance with the FLSA, instead adopting the prior owner's method of payment. Defendants asserted they consulted on how to pay their employees with their accountant, but these conversations were not specifically directed to compliance with the FLSA's overtime requirements, nor were these

27

conversations recounted in response to interrogatory requests. (Ex. C, Hur Resp. to Interrogs. No. 3; Ex. E, Kim Resp. to Interrogs. No. 3.) Further, Defendants have been unable to point to any documents they read or relied upon in good faith to comply with the FLSA. The Secretary is accordingly entitled to liquidated damages in an equal amount to the unpaid overtime compensation.[18]

### F.   The Court should issue an injunction against Defendants to ensure compliance with the FLSA.

District courts may enjoin violations of the pay provisions of the Act pursuant to section 17 of the FLSA, 29 U.S.C. § 217. "In exercising its discretion, the court must give substantial weight to the fact that the Secretary seeks to vindicate a public, and not a private right." *Martin v. Funtime Inc.*, 963 F.2d 110, 113 (6th Cir. 1992) (citation and internal quotation marks omitted). Imposition of an injunction is "essential" and is not punitive because it imposes upon the employer duties already required by the Act. *Id.* at 114. The primary concern is whether the violations are likely to reoccur in the future. *Id.*. Here, an injunction is necessary because Defendants, even since being made aware of their alleged violations in 2015, have failed to correct their violative practices, instead creating various "schemes" to avoid liability. Therefore, not only have Defendants continued to violate the overtime

---

[18] If the Secretary's request for double damages is denied, then in the alternative, the Secretary requests a lesser amount of liquidated damages or prejudgment interest in lieu thereof. Federal courts have long been authorized to award prejudgment interest on back wages to employees for periods not awarded liquidated damages. *See, e.g.*, *Usery v. Associated Drugs, Inc.*, 538 F.2d 1191, 1194 (5th Cir. 1976).

requirements of the FLSA, but any assurances of future compliance are unreliable. *Accord Hodgson v. Prior*, 340 F. Supp. 386, 389 (S.D. Ohio 1972) (issuing injunction where employer used similar scheme to circumvent the FLSA).

## IV.   CONCLUSION

The Secretary requests his *Motion for Summary Judgment* be granted and an entry of a finding that Defendants violated the overtime and recordkeeping provisions of the FLSA; are liable for the uncompensated compensation as well as liquidated damages in an equal amount; and are enjoined and restrained from violating said provisions of the FLSA in the future.

DANIEL L. LEMISCH
Acting United States Attorney

LOCAL COUNSEL


s/ Peter A. Caplan
PETER A. CAPLAN
Assistant U.S. Attorney
211 W. Fort Street, Ste. 2001
Detroit, MI 48226
(313) 226-9784
peter.caplan@usdoj.gov
P-30643

NICHOLAS C. GEALE
Acting Solicitor of Labor

CHRISTINE Z. HERI
Regional Solicitor


s/ Brooke E. Worden
BROOKE E. WORDEN
Trial Attorney
Office of the Solicitor
U.S. Department of Labor
230 S. Dearborn St., Ste. 844
Chicago, IL 60614
Telephone: (312) 353-1218
worden.brooke.e@dol.gov
Bar Number: 6299672 (IL)

Attorneys for **R. Alexander
Acosta**, Secretary of Labor,
U.S. Department of Labor

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on May 15, 2017, I electronically filed the foregoing *Secretary of Labor's Motion for Summary Judgment* and accompanying brief and exhibits with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

> Cindy Rhodes Victor
> Kus Ryan PLLC
> 2851 High Meadow Circle, Suite 120
> Auburn Hills, Michigan 48326

> s/ Brooke E. Worden
> BROOKE E. WORDEN
> Trial Attorney
> Office of the Solicitor
> U.S. Department of Labor
> 230 S. Dearborn St., Ste. 844
> Chicago, IL 60604
> Telephone: (312) 353-1218
> Email: worden.brooke.e@dol.gov
> Bar Number: 6299672 (IL)