UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| R. ALEXANDER ACOSTA,<br>Secretary of Labor,<br>United States Department of Labor, | )<br>)<br>)<br>) | |
| Plaintiff, | )<br>) | |
| v. | )<br>) | Civil Action No.:<br>2:15-cv-14310-GCS-EAS |
| MIN & KIM INC., d/b/a<br>SEOUL GARDEN OF ANN ARBOR,<br>a Michigan corporation,<br>KOUNWOO HUR, an individual,<br>and SUNG HEE KIM, an individual | )<br>)<br>)<br>)<br>)<br>) | Hon. George Caram Steeh<br>District Judge |
| Defendants. | )<br>) | Hon. Elizabeth A. Stafford<br>Magistrate Judge |

<u>SECRETARY OF LABOR'S
MOTION FOR SUMMARY JUDGMENT</u>

# EXHIBIT M

Declaration of Wage and Hour
Investigator Jihong Meng

(Meng Decl.)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| R. ALEXANDER ACOSTA,<br>Secretary of Labor,<br>United States Department of Labor,<br><br>  Plaintiff,<br><br>v.<br><br>MIN & KIM INC., d/b/a<br>SEOUL GARDEN OF ANN ARBOR,<br>a Michigan corporation,<br>KOUNWOO HUR, an individual,<br>and SUNG HEE KIM, an individual<br><br>  Defendants. | Civil Action No.:<br>2:15-cv-14310-GCS-EAS<br><br>Hon. George Caram Steeh<br>District Judge<br><br>Hon. Elizabeth A. Stafford<br>Magistrate Judge |

## DECLARATION OF WAGE AND HOUR INVESTIGATOR JIHONG MENG

I, Jihong Meng, pursuant to 28 U.S.C. § 1746, declare the following:

1. I am currently employed by the United States Department of Labor, Wage and Hour Division ("Wage and Hour"), where I have been employed as a Wage and Hour Investigator ("WHI") in the Detroit District Office, 211 W. Fort Street, Room 517, Detroit, MI 48226, since 2006.

2. As part of my duties as a WHI, I conduct investigations of employers to determine, among other things, compliance with the Fair Labor Standards Act of 1938 ("FLSA" or the "Act"), and its implementing regulations.

3. I began an investigation of Min & Kim, Inc. d/b/a Seoul Garden ("Seoul

Garden") on October 28, 2014 to determine, in part, whether Seoul Garden was in compliance with the FLSA's overtime and recordkeeping provisions.

4. On October 28, 2014, I visited Seoul Garden's restaurant in Ann Arbor, Michigan, where I met with owners Kounwoo Hur and Sung Hee Kim (with Seoul Garden, collectively "Defendants"). I also reviewed records provided by Mr. Hur, conducted surveillance of the employees' work and breaks, and interviewed a number of employees who worked in the kitchen, as well as servers. (Later in the investigation, WHIs Romelia Martinez-Stempihar and Ricardo Caudillo assisted me by interviewing Spanish-speaking employees.)

5. My investigation covered the time period from October 29, 2012, through October 28, 2014.

6. During my initial conference on October 28, 2014, I requested time records. In response, Defendants only produced employee schedules. True and correct copies of the schedules provided are attached as Exhibit H to the Secretary's *Motion for Summary Judgment*.

7. Mr. Hur explained to me that the schedules show an "O" if the employee worked that shift and an "X" if the employee was absent. Two "O"s equal one day. The schedules did not reflect starting and ending times for each shift. Defendants did not produce any records documenting actual hours worked by employees.

8. Defendants also provided payroll records for the time period of October 1, 2012, through October 15, 2014. True and correct copies of the payroll records for September 11, 2013,[1] through October 15, 2014, provided during my investigation are attached as Exhibits I and J to the Secretary's *Motion for Summary Judgment*. Exhibit I are payroll records maintained by Mr. Hur; Exhibit J are payroll records provided by Defendants' accountant, Daniel Choi CPA, Inc.

9. The employers' payroll records display only the amount paid by cash or check. The payroll records do not reflect the hours worked, regular rate, straight time pay and overtime pay for each workweek for each employee. Employees received their pay on a semi-monthly basis.

10. Mr. Hur and Ms. Kim explained they had adopted their pay method from the previous owner. Mr. Hur stated that employees were paid on a daily basis, and the payment made to employees included overtime pay. Mr. Hur and Ms. Kim could not provide hourly rates or actual hours worked for any employees.

11. Based on my review of Seoul Garden's payroll records and schedules, as well as employee interviews, I concluded that Defendants' employees are paid on a day rate or salary basis. I also determined that Defendants did not pay their employees an

---

[1] Back wages were calculated from September 11, 2013, based on the two-year statute of limitations period for FLSA violations. 29 U.S.C. § 255(a). Prior to the filing of the Complaint, Defendants signed a series of agreements to toll the statute of limitations from September 11, 2015, through December 11, 2015.

3

overtime premium equal to one-half of their regular rate for all hours worked over 40 hours per workweek and therefore violated the FLSA's overtime provisions. The overtime violations were apparent on the "face of the records;" that is, the payroll records reflected that employees were paid on a day-rate basis without additional overtime pay. The employees interviewed by Wage and Hour confirmed that they were paid by the day and did not receive overtime pay based on their actual hours worked.

12. I further determined, based on the records, that Defendants did not maintain daily and weekly records of hours worked for all of their employees. Defendants did not maintain records of each employee's computed regular rate or overtime compensation paid. Defendants did not maintain full names and addresses for some employees. Accordingly, I concluded that Defendants violated the Act's recordkeeping provisions.

13. During my investigation, Mr. Hur and Ms. Kim requested I meet with their accountant, Amy Lee (of Daniel Choi CPA, Inc.). Ms. Lee provided a reconstruction of hours worked and hourly rates for a few selected employees to demonstrate how Defendants' day rates included overtime. Ms. Lee's reconstruction, created after I initiated the Wage and Hour investigation, included hourly rates calculated to 1/10th of a cent. A true and correct copy of Ms. Lee's reconstruction provided during my investigation is attached as Exhibit Q to the Secretary's *Motion for Summary Judgment*.

4

14. Also during my investigation, Mr. Hur provided a reconstruction for four employees of hours worked and hourly rates, in an effort to demonstrate how overtime was included. The payments used by Mr. Hur in this reconstruction did not match the employees' payroll records, and he had added a monthly bonus to make up the difference. A true and correct copy of Mr. Hur's reconstruction provided during my investigation is attached as Exhibit R to the Secretary's *Motion for Summary Judgment*.

15. I did not credit the employers' reconstructions because of the inconsistencies between the two reconstructions, the fact that Mr. Hur and Ms. Kim could not provide hourly rates for employees during the initial conference and never mentioned regular bonuses to employees, and the fact that the reconstructions were created after the initiation of the Wage and Hour investigation. Notably, Ms. Lee's reconstruction did not include any bonuses or advances, which were prevalent in Mr. Hur's reconstruction. It appeared to me that Defendants were attempting to "back into" the numbers using different schemes to make it appear as though they were paying overtime.

16. In response to discovery in this matter, I received updated payroll and time records for the time period subsequent to my investigation of August 29, 2016, to March 26, 2017. True and correct copies of these additional records are attached as Exhibits K and L to the Secretary's *Motion for Summary Judgment*. Defendants also provided

employment contracts from January 2017, allegedly documenting each employee's wage rate, overtime pay rate, and guaranteed wage payment for six days of work per week. True and correct copies of these employment contracts are attached as Exhibit G to the Secretary's *Motion for Summary Judgment*.

17. To date, I have not received time and payroll records for the time period of October 15, 2014, through August 29, 2016.

18. The payroll records covering the time period of August 29, 2016, to March 26, 2017, are different from those provided during my investigation, as Defendants started using a timeclock to record actual hours worked. In addition, the records reflect deductions for rent and a "bonus to match" that is paid to each employee each pay period.

19. Though the records provided during discovery were different than those originally obtained during the investigation, they demonstrate that Defendants continued to violate the FLSA's overtime provisions by paying a day rate without properly computing the regular rate for overtime purposes.

20. Based on the payroll and time records provided and my reconstructions for time periods where no records were provided, I computed back wages of $112,212.85 for 28 of Defendants' employees for the period of September 11, 2013, through March 26, 2017.

21. Because the payroll and time records from the investigation period were different from the payroll and time records produced during discovery, as well as the large period of time for which Defendants have not produced any payroll or time records, I had to apply different approaches to the different time periods to calculate back wages due for the overtime violations. The records available and the method used for each time period are summarized in the following chart, and detailed further in paragraphs 22 to 29:

| TIME PERIOD | RECORDS AVAILABLE | METHOD(S) USED |
|---|---|---|
| 09/11/13 to 10/15/14<br><br>Time period for which Defendants produced pay records and schedules during the investigation covering the period of 10/01/12 to 10/15/14.[2] | - Employee "X" and "O" Schedules (Exhibit H)<br><br>- Mr. Hur Payroll Records (Exhibit I)<br><br>- CPA Payroll Records (Exhibit J) | (1) Hours worked estimated; semi-monthly payment divided by hours worked during that time period to compute regular rate; one-half the regular rate multiplied by number of overtime hours worked in a given workweek. (*See* ¶23 & Exhibit T).<br><br>(2) Hours worked estimated; guaranteed wage payment converted to weekly payment divided by weekly estimated hours worked to compute regular rate; one-half the regular rate multiplied by total |

---

[2] Back wages were calculated from September 11, 2013, based on the two-year statute of limitations period for FLSA violations. 29 U.S.C. § 255(a).

7

| TIME PERIOD | RECORDS AVAILABLE | METHOD(S) USED |
|---|---|---|
| | | overtime hours worked for employee's entire employment period (derived from first method). (See ¶24 & Exhibit T). |
| 10/16/14 to 09/15/15<br><br>Time period prior to filing the Complaint for which no records were produced during the investigation. | - No records | Hours worked estimated; previously determined regular rate from Method (2) above multiplied by total overtime hours for that time period. (See ¶25 & Exhibit T). |
| 09/19/15 to 08/29/16<br><br>Time period for which no records were produced during discovery. | - No records | Hours worked estimated based on average from 08/29/16-03/26/17 records; pay amounts estimated based on amounts paid from 09/11/13-10/15/14 records; one-half the regular rate multiplied by the estimated overtime hours worked to calculate the half-time premium due per workweek; half-time premium due per workweek multiplied by the number of workweeks in this time period. (See ¶28 & Exhibits V, W). |

| TIME PERIOD | RECORDS AVAILABLE | METHOD(S) USED |
|---|---|---|
| 08/29/16 to 03/26/17<br><br>Time period for which Defendants produced updated pay and time records during discovery. | - Seoul Garden Kitchen Payroll (Exhibit K)<br><br>- Seoul Garden Waitress Payroll (Exhibit L) | Total weekly compensation received divided by actual hours worked to compute regular rate per workweek; one-half regular rate multiplied by number of overtime hours worked in a given workweek. (See ¶29 & Exhibits V, W). |

22.　First, during my investigation, I calculated back wages for the period of September 11, 2013, through September 15, 2015.

23.　For the initial time period from September 11, 2013, to October 16, 2014, for which Seoul Garden provided records during the investigation, I transcribed the employers' semi-monthly payroll into a spreadsheet. Because Defendants did not have records of actual hours worked, I estimated the hours worked based on employee interviews, statements from Mr. Hur and Ms. Kim, the restaurant's hours, and my surveillance of the establishment. I estimated that the majority of the kitchen staff worked 8.5 hours on weekdays and 9 hours on weekend days, while tipped employees worked 3.5 hours for a lunch shift and 4.75 to 5.5 hours for a dinner shift.[3] *See* Exhibit T

---

[3] Tipped employees are treated as employees earning minimum wage, i.e., the employers claimed a tip credit and I therefore considered each tipped employee to have been paid at least minimum wage. Accordingly, the Michigan minimum wage was used to calculate the regular rate for tipped employees for purposes of calculating

9

attached to the Secretary's *Motion for Summary Judgment*, wherein I explain how I estimated hours worked for each employee. I then computed how many hours were worked in a semi-month and a workweek, as well as how many overtime hours were worked per workweek. I computed the employee's regular rate by dividing the semi-monthly payment by the hours worked during that period. I then multiplied half of the regular rate by the number of hours each employee worked over 40 in any given workweek.

24. Some of the calculations based on the employers' pay records resulted in a regular rate that was illogical and did not reflect the reality of the employee's pay (for instance, if the employee received an advance). Therefore, I used a second reconstruction method for this time period to ensure accuracy and fairness. For the second method, I converted the semi-monthly payment to a weekly payment, computing the regular rate by dividing the weekly payment by weekly estimated hours worked. I then multiplied half the regular rate by the total overtime hours worked for an employee's entire employment period (derived from the first method). For example, an employee making $1,300 semi-monthly makes $600 per week (($1,300 *24)/52 = $600). I divided this $600 weekly payment amount by the estimated weekly hours worked to arrive at a regular rate. If the employee worked an estimated 52 hours per week, the regular rate

---

overtime due, as the higher state minimum wage is the lawful rate, pursuant to 29 C.F.R. § 778.5.

would be $11.54. I then multiplied half of $11.54 by the total overtime hours worked for the employee's entire period of employment. So if the employee worked 12 weeks with 12 hours of overtime per week, the equation would be $5.77 * 144 = $830.88 in overtime back wages due.

25. For the time period for which I was not provided records from October 16, 2014, to September 15, 2015, I estimated the total hours worked based on my prior calculations. I then multiplied the total overtime hours by one-half of the previously determined regular rate to arrive at the amount owed for that time period.

26. True and correct copies of the reconstructed back wage calculations for the time period of September 11, 2013, to September 15, 2015, are attached as Exhibit T to the Secretary's *Motion for Summary Judgment*. For this time period, I calculated a total of $56,170.94 in unpaid overtime compensation due to employees. *See* "Summary of Unpaid Wages," attached as Exhibit U to the Secretary's *Motion for Summary Judgment*.

27. After I concluded my investigation and initial back wage computations for the time period of September 11, 2013, to September 15, 2015, I was provided updated records and asked to calculate back wages for the time period of September 19, 2015, to March 26, 2017.

28. For the time period for which I was not provided records from September 19, 2015, through August 29, 2016, I reconstructed back wages for only nine employees

11

that were employed by Seoul Garden during the investigation period and remained employed as evidenced in the August 29, 2016, to March 26, 2017 payroll records. I used the amounts paid by Seoul Garden as reflected in my prior reconstructions (Ex. T, Spreadsheets) but calculated average weekly hours worked from Defendants' most recent 2016 and 2017 time records (Ex. K, 3d Pay Records; Ex. L, 4th Pay Records). These records more accurately reflect the actual hours worked by employees than my prior estimations. Using these pay and hours estimates, I calculated a regular rate and multiplied one-half the regular rate by the average number of overtime hours worked to compute the half-time premium due. If the regular rate fell below the state minimum wage, I used a regular rate meeting the lawful state minimum wage. To calculate overtime, I used the higher Michigan minimum wage rates of $8.15 in 2015 and $8.50 in 2016 per hour. 29 C.F.R. § 778.5. I then multiplied the amounts owed by the number of workweeks in 2015 and 2016 that were unaccounted for in Seoul Garden's records.

29. Finally, for the time period of August 29, 2016, to March 26, 2017, I used Seoul Garden's pay and time records produced during discovery. I calculated each employee's regular rate on a workweek by workweek basis using the actual hours worked and the total weekly compensation received by the employee (calculated by using the amounts from the columns "Amount Due" plus one-half of the "bonus to match"). *See* Exhibits K and L attached to the Secretary's *Motion for Summary Judgment*. I multiplied

12

one-half the employee's regular rate by the number of overtime hours per workweek to arrive at the overtime amount due for each workweek. Seoul Garden's pay records reflect that Seoul Garden took a housing deduction from several employees' pay to compensate for housing provided by the employer. Because an employee's regular rate is computed prior to an employer taking a housing deduction, this amount was not deducted in my computations.

30. True and correct copies of the reconstructed back wage calculations for the time period of September 19, 2015, through March 26, 2017, are attached as Exhibits V and W to the Secretary's *Motion for Summary Judgment*. For the time period, I calculated a total of $56,041.91 in unpaid overtime compensation due to employees.

31. As stated, I computed the total amount of unpaid overtime back wages due to 28 of Seoul Garden's employees for the entire period of September 11, 2013, to March 26, 2017, to be $112,212.85.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: 5/12/2017

Jihong Meng
Investigator
Wage and Hour Division
U.S. Department of Labor
Detroit District Office
211 W. Fort St., Rm. 517
Detroit, MI 48226

13